Alex Michael Azar, II, Secretary, United States Department of Health and Human Services Ms. Paganis for the appellants, Ms. Schoen for the appellate    Good morning, Ms. Paganis. We'll hear from you. Good morning, Your Honors. May it please the Court, Katrina Paganis from Hooper-Lundy and Bookman on behalf of Fresno Community Medical Center and 683 other Medicare participating hospitals. I'd like to reserve two minutes for rebuttal. This appeal concerns the federal court's power to review the Secretary's unlawful continuation of a 0.7% payment reduction, resulting in an $840 million yearly cut in hospital payments that the appellant hospitals timely and properly appealed. The district court, misapplying the preclusion statute dismissed for lack of jurisdiction, and in doing so erroneously concluded that review would only be available if the hospitals could establish the payment reduction was patently unlawful. The district court, however, was writing without the benefit of DCH Regional Medical Center v. Azar and American Hospital Association v. Azar, both of which confirm that the same agency error can simultaneously render a jurisdictional bar inapplicable and compel setting aside the agency action. So it is here. Section 7B.5 of the TMA only precludes review of determinations and adjustments made under a statute that explicitly prohibits the Secretary from continuing payment reductions into subsequent years. And thus, the Secretary's continuation of the 0.7% fiscal year 2017 adjustment to reduce payments in 2018 is not subject to preclusion under the plain text of the statute. Didn't Congress in 2016, when it enacted the MACRA, essentially direct the Secretary to, I guess, not restore completely payment adjustment that had been made in prior years? By limiting the, I'm not sure the right term to use, but the restoration to a total of 3.0%? Yes, Your Honor, but with some caveats. When Congress acted in 2015, CMS had indicated for three years that, or actually for two years at that point, that it anticipated making a total 3.2% negative adjustment after ATRA that would be loaded into the rate by fiscal year 2017. And so Congress said, instead of the offsetting adjustment for that 3.2% coming in in 2018, we're going to pay for a Medicare physician payment rate fix with a ladder of adjustments through 2023 with a residual to be fully restored thereafter in subsequent years, because it's very clear these temporary adjustments can't continue forever. And so, but when it did so, Congress didn't just say this is in lieu of the positive adjustment that would apply in 2018. It said estimated to be 3.2% because it was acting well in advance of CMS's finalization. But my point in the question, well, there are several points in the question, but one of them is that Congress directed the Secretary to do something that is on its face, contrary to what you say the plain language of 7B2 allows. 7B3 adopts another set of adjustments. So, you know, under MACRA alone, it essentially adopted a net negative 2.7% reduction. But because it was being done before Congress knew what money was on the table, it uses slightly different language. Congress was, you know, I have no concerns with Congress, you know, retaining some funds to achieve very specific congressional purposes. But here we have a surplus unanticipated 0.7%, $840 million each year that Congress did not expect or anticipate and therefore did not speak to. And because Congress did not speak to that 0.7%, the default rules remain, which is that the ATRA adjustments after fiscal year 2017 need to be eliminated. And so that, you know, it's narrowly construing 7B3 against that clear backdrop that in ATRA it says those adjustments only apply for fiscal years 2014, 2015, 2016, and 2017. And in 7B2 it says it needs to be removed from the standardized amount in a subsequent year. So any time if the Secretary were to believe that an adjustment needed to be made and decreased the standard rate by a certain percentage and failed to, I guess, restore the standard rate to the base rate, in a future year, under your theory, that would always be reviewable because that's not an adjustment. Yes, Your Honor. The continuation of an adjustment is distinct from an adjustment made under the statute. And what court has ever held that? Well, we start with the narrow construction of the preclusion statute. And this is, say, most analogous to this court's interpretations of the preclusion statute in the outpatient prospective payment system, which refers to the development of a classification system under Paragraph 2, including the establishment of other adjustments, including a method under T2F, etc. And in each of those cases, Amgen's and American Hospital Association versus Azar and others, this court has said that it will look at the consideration of the merits and jurisdiction merge when determining the scope of the bar. And when an appellant is saying that, for example, this is not a method under subsection T2F, then that gets reviewed on the merits because the question of the merits and the jurisdiction merge under the language of that preclusion statute. And this calls back to the requirement to narrowly construe a preclusion statute unless the secretary has and only apply preclusion if the secretary can present clear and convincing evidence that Congress intended to preclude review. You think it's a narrow but fair reading of this preclusion statute to say review is precluded, but only if the government's position is right on the merits? That's what you're saying. Yes, Your Honor, with a caveat. You know, if certainly we couldn't have come in 2017 and said that the adoption of the net negative 3.9 adjustment was unlawful because, you know, that is the making of an adjustment under subsection 7B1B2. But here we have, you know, the making of the adjustment, the positive .4588, but we have this unspoken to net, you know, negative .7 that Congress didn't address and it is being carried over. If we could take, for example, an extreme circumstance, if we have 2024 and the secretary keeps the .7 plus the residual .2412 on the books, right, that continuation of the net negative adjustment into 2024 would violate 7B2. Is something prohibited by Congress? And Congress was not speaking to the continuation of an adjustment in the preclusion statute. In the governing statutes, MACRA, Cures Act adjusts MACRA, which gives a very specific command to make an adjustment. That word used is adjustment, which is one of the same words that triggers the preclusion, triggers the judicial review bar in 7B4. And all of this is done under 7B of the TMA. Yes, Your Honor, however, 21st Century Specific agency action under review in its label and in its substance is an adjustment to the standardized amount. The positive .4588% adjustment is an adjustment. However, the retention of the .7 is something distinct and separate in kind. Congress, in 21st Century Cures, knowing that the final ACRA adjustment was 3.9%, left in the statute 3.2%. And I think Congress's intent here is pretty clear from 21st Century Cures. They go down to the 10,000th of a percent to get an adjustment, an additional negative adjustment of .0412%, which yields $60 million, according to the Congressional Budget Office. So they're searching for $60 million when there's $840 million on the table had they simply changed 3.2% to 3.9%. The problem that I have with this argument is that the agency had said, the secretary had said that it was going to reduce by a total of 3.9%, I think, in August of 2016. And then three months later or so, Congress writes this statute, and they don't say that's wrong. It should be a total of 3.2%. I mean, your argument about Congress being specific cuts against you. Because your clients had had this battle in the commentary when the regulation was being promulgated about whether the secretary could do what it did, and it disagreed with you. And then Congress acted, and Congress didn't correct the secretary. I mean, that weighs against you, if anything. The back and forth, Your Honor, in the 2017 rulemaking cycle concerned whether ATRA gets to a negative 3.2% or a negative 3.9%. And that is not the unlawful conduct that we are arguing here. We do not take issue with the making of an adjustment in fiscal year 2017. But you argue that Congress intended for the adjustment to be no more than 3.2%. And Congress could have said so after the secretary said, we're going to make an adjustment of up to 3.9%. Well, Your Honor, I would take the view that Congress did say so. The secretary said, we're going to end up with net negative 3.9%. Congress left in language, it said, estimated to be 3.2%. And did not adjust it to reflect that additional 0.7% or speak to that 0.7%, which is 20% higher than that 3.2% spoken to in the statute. And at that time, CMS had not yet taken the position that in 2018, it was going to also continue the 0.7% reduction. So Congress had no way of knowing in 21st century cures that CMS was going to take the view that that 0.7% carries over, despite Congress not having spoken to it. Excuse me, this, the 0.04588 is an adjustment under the act, right? Yes, Your Honor. So what you're telling us is that that is an improper incorrect adjustment. And yet the judicial review provision says it doesn't say adjustments made by the secretary says any adjustments under this subsection that are not reviewable. So we can't review that the point 04 and whatever and say it's too small. Well, Your Honor, we are not asking this court to answer the question of whether the 0.4588 is appropriate. We are taking our view, which we think is supported by the plain text of the statute is that there is a 0.7% that section subsection B5B3 does not address. And so, you know, the 0.4588, which gets you to a net negative 2.7412 apologies, Congress went down to the 10,000th of a percent is not on the table for review, but the 0.7% that is not addressed in B3 is absolutely on the table because Congress said in B2 that that was only for for discharges occurring in fiscal year 2017. Which, which is an argument that the adjustment that the agency made the upward adjustment the agency made wasn't high enough because they didn't take account of other provisions in the statute. You know, this is Yes, Your Honor, there, you know, at the end of the day, when we load in everything and adjust the rate, we're arguing that there was, you know, an $840 million under underpayment that would be cured by a positive 0.7% adjustment. But it's not that it wasn't big enough or anything along those lines. It wasn't spoken to by Congress. And if Congress has not spoken to it, then the backdrop that Congress made Tripoli sure was in place with the language in 7B2, the language in 7B1, B2, both of those, you know, make very clear that the default rule is it evaporates in 2018 And Congress not having spoken That just assumes you're assuming you're assuming the truth of your argument when you say Congress didn't speak to it. That assumes when I said .04588 wasn't saying, and we really mean it. This is the adjustment, you should make. If that is what Congress did and it certainly seems to be on the face of it, then it did speak to the .07 Well, viewed another way, the positive .4588 is not just said in isolation, it's .4588 in lieu of the adjustment that otherwise would apply, which is estimated to be 3.2%. That gets you to a net negative 2.7412%. That is what Congress spoke to Congress said UCMS retain a net negative 2.7412% with some small margin for error, but did not authorize the Secretary to retain anything more than that. I see I've gone over my time and I'll reserve the remainder for rebuttal. If there are no further questions at this time. Any further questions. All right. Thank you. We will hear from Council for Appellee Ms. Schoen Good morning. May it please the court, Karen Schoen on behalf of the Secretary of Health and Human Services. The underlying dispute in this case is about the amount of the adjustment that the Secretary was required to make in fiscal year 2018 The statute, in particular, subparagraph little Roman three, which is on ja 245 directs the Secretary to make a .4588% adjustment in 2018 instead of the adjustment that would otherwise apply under section 7B2 to offset the prior recoupment adjustments. And that's exactly what the Secretary did. Plaintiffs, however, say that the Secretary was required to make an additional .7% adjustment such that the total adjustment would have been 1.14588% Now as a threshold matter, their claim is precluded by the statutes review bar because they're challenging the amount of an adjustment. But whether it's a review bar question or just a merits question, the directive under the statute is clear and the Secretary did exactly what the statute directed him to do. I think if it's if I may, I think it's it's important to keep in mind that Congress amended that subparagraph little Roman three To direct the .4588% adjustment after the Secretary had already announced that the total recoupment adjustment would be 3.9% And so if Congress had wanted the Secretary to make an additional .7% adjustment to reflect that that higher recoupment adjustment that the Secretary ended up making, then Congress would have said so. Instead of directing a .4588% adjustment in 2018 Congress would have told the Secretary to make a 1.1588% adjustment. There's, there's no reason to think that Congress intended anything other than the .4588% adjustment that it specified in subparagraph little Roman three Are we supposed to interpret the statutory language with the jurisdictional bar narrowly? Well, I think there, there, there generally is a presumption in favor of judicial review. And so the, the provision should be interpreted with that backdrop. But I think here the what the provision says is that it bars judicial review of any determination or adjustment under subsection 7B and what the Secretary did was an adjustment under section 7B. Did the Secretary call it an adjustment? Um, I believe so. But I confess, Your Honor, I'm not sure now what the language was in the rulemaking. The statute, however, refers to it as an adjustment little Roman three says directs the Secretary to make an additional adjustment. I mean, I guess, I guess the point I'm getting to is, is that, is that You know, how are we supposed to know an adjustment. When we see it, you know, is it, is it like, you know, the obscenity tests will know when we see it or what, what are the characteristics of of an adjustment. Well, I think here the best Matter if the Secretary calls it something else. Well, I think what should, I mean, I think the best indicator here is the fact that the statute itself refer to it as an adjustment. And since we're interpreting the statutes review bar. I think it's very instructive to look at the way the statute referred to The thing that the Secretary did the by by increasing the standardized amount by point four or 588% And the statute refers to that as an adjustment and the statute more generally refers to what the Secretary otherwise would have done under 7b to to offset the prior recruitment adjustments as an adjustment. So I think those are both very good clues and and you know and arguably dispositive here that what the Secretary did was was make an adjustment. There any language codified language in the CFR that you're aware of. I'm looking at I'm looking at the preamble Of that agency action and it's expressly described as an adjustment in the preamble They say they are finalizing the plus point four or 588 percentage point adjustment, but I don't have the actual reg or or know if there's a reg, but this preamble tends to support you anyway for what that's worth. As does the statute 7b whatever Was it one be Yeah 77 be one be capital B says, which was the This the provision that was amended with a point four or five says that you shall make an adjustment of the following amount and So both the statute and the preamble support that And again, Your Honor, Judge Wilkins, I, you know, I think whether this is, I mean, as we've Argued in our brief. We think this is within the plain terms of the review bar, but whether it becomes a review bar question or you you decide to reach the merits. I think the directive under the statute was clear and the Secretary did exactly what the statute directed him to do. Under your provision or your position that don't even need the jurisdictional bar. That's right. I mean, I think if you reach the merits, you know, I think the, you know, as the Secretary said in the rulemaking the directive under the statute was clear. The statute directs the Secretary to make a point four or 588% adjustment and that's exactly what the Secretary did The jurisdictional bar applies not only to judicial review. It also applies to administrative review was that invoked When the, the plaintiffs here challenge this I'm not sure, Your Honor, I think the I think it was just expedited for immediate judicial review. I'm not sure if if that issue was ever actually addressed in the in the administrative proceeding. Okay. Is the bar on judicial review jurisdictional in the sense that we have to address it first. I know, Your Honor. I mean, I think generally you you do address it first. It's not a matter of Article three jurisdiction and in the recent You'll go wouldn't compel us to we could skip over I mean, you could. And that's in fact what the this court recently did in the American Hospital Association case which plaintiffs cited in their 28 J letter. As to the hospital's second claim the court expressed doubt that they could review it because they just determined that the adjustment was within the scope of the review bar, but nonetheless assumed statutory jurisdiction as they refer to it to go on and address the merits and dismiss the claim on on that basis. So, I mean, you could potentially do that if you wanted to. But on the other hand, I mean, I had thought preclusion was preclusion judicial review no review jurisdiction strip, whatever you call it. I thought it's actually an easier ground for you because the merits argument is that the Secretary Got this right. The review ability argument is simply that the Secretary was doing all of this under Section seven be which seems very obvious. Right, I, I agree, Your Honor. Yes. I'd be happy to answer any, any other questions if the court has any Any further questions. All right. Thank you, Your Honor. Will Give Miss Pagonas two minutes for rebuttal. Thank you so much. There I am unmuted. I first responding quickly to a question that that judge Randolph post concerning the administrative review in this action on the, the question of jurisdiction was The jurisdictional bar was raised in the issue statement before and the request for EJ are before the PR be and the PR be determined that it had jurisdiction and granted expedited judicial review. For the federal courts to to review address address the case. So it was not evoked by the PR be now. You know, I would just like to quickly point out that, for example, an Amgen versus Smith, where there was a question about A preclusion on review of the establishment of other adjustments. It was, it was clear that we had an adjustment at play in Amgen But the court said that the preclusion of review of other adjustments extends no further than the Secretary's authority to make them And and the same approach should dictate that the construction of the preclusion statute here. The preclusion on review of adjustment shall extend should extend no further than the Secretary's authority to make adjustments on it now under American Hospital Association versus as are that same Back to judge Cass's question. I mean, that means makes the bar totally worthless, because the only time that you can invoke it is when the Secretary had authority to do what he did. Well, the bar here operated for many years to wholly bar review of adjustments made in 2010 all the way through 2017 because in each stage. In each in each step the Secretary had this authority to adopt a an adjustment applied his discretion to calculate the amount of the discretion and so forth and adopted that adjustment in 2018 Congress. If you summarize, you know what it says in B3 with it, you know, it said to make a net negative 2.7412% and instead CMS adopted a net negative 3.4412% adjustment. CMS did something that was neither authorized nor contemplated by Congress and Congress far from authorizing the Secretary to make such an adjustment. Said that the Secretary cannot make or cannot continue over adjustment. This is extraordinary unusual and limited authority that's granted in a TMA with all the subsequent amendments. That the Secretary does not have any place else in the Medicare Act and that intent for a narrow authorization pervades the statute on And and and make makes clear that intent and my my clock disappeared. So I hope I have not gone impeded too far on your time. Excuse me, judges time has run out. Thank you, Your Honors. All right. If there are no further questions, we will take the matter under advisement. Thank you, counsel.
judges: Wilkins, Katsas, Randolph